`       D. C. WILLIAMS v. ELIZABETH HULING.

1. PRACTICE—WITHDRAWAL OF ANSWER.—A defendant duly served by publication, who had answered, and at a subsequent term had withdrawn his answer, cannot complain that an order of dismissal of the suit subsequent to such withdrawal was revoked and the suit reinstated.
2. PAROL AGREEMENT OF ATTORNEYS.—Although courts are not required to enforce agreements of counsel not reduced to writing, it does not follow that it is error in the court to enforce a parol agreement.
3. APPEARANCE, EFFECT OF.—A defendant, in a suit by publication, having filed an answer, cannot, by its withdrawal and the payment of the fees of his attorneys, avoid the results of such appearance or claim that the suit should proceed as though he had been served by publication and had not answered.
4. AMENDMENT—CHANGE IN CHRISTIAN NAME OF PLAINTIFF.—Such amendment was not of a character to require notice to the defendant.

ERROR from Denton.    Trial below before the Hon C. C. Binckley.

April 17, 1868, *Sarah* Huling, as surviving wife of Thomas B. Huling, deceased, sued plaintiff in error, Williams, by publication, alleging that she had returned an inventory of the community property of herself and her deceased husband; that she had taken charge of said property; that on 6th September, 1861, her husband had executed to one M. W. Allen a power of attorney, authorizing him to sell a certain league of land in Denton county; that June 1st, 1863, said Allen, without authority, sold and executed a deed for the land to Williams for Confederate notes, such notes having no value, and being illegal

and void as a consideration; that such deed is a cloud upon the title to the land.

Due service of citation was had before the October term.

April 16, 1869, defendant, by attorney, filed a general demurrer, general denial, and specially that Allen had special authority from Thomas B. Huling to sell for Confederate notes, and that Huling approved the sale and received the Confederate notes; and that Allen represented to defendant, to induce the sale, that he had Huling's authority to sell for Confederate notes, and asking that Allen be made defendant, and for judgment against him in event of recovery by plaintiff.

The answers were filed by "Welch and Piner & Bledsoe, attorneys for defendant."

At the fall term, 1870, in the cause, the following order was made:

"Now, on this day (December 5th, 1870) came into open court the defendant, Williams, by his attorneys, and asks leave of the court to withdraw his answer, heretofore filed in this cause, which is accordingly granted; and the said answer was by him withdrawn and abandoned. And thereupon, the plaintiff having failed to appear and prosecute this suit, upon the motion of *S. Hare*, it is ordered by the court this cause be dismissed, and that the defendant go hence without day and recover of the plaintiff all costs," &c.

December 6, 1870, Thomas J. Brown, one of the attorneys for plaintiff, filed a motion to reinstate the cause, "because, he says, that prior to the beginning of this term of the court affiant entered into an agreement with Joseph Bledsoe, one of the attorneys of defendant, to the effect that this cause, with others, should not be disposed of in the absence of either of them, the said Brown and Bledsoe; that at that time S. Hare, partner with Bledsoe, was at McKinney, and Bledsoe agreed to write to his as-

sociate counsel as to that agreement, and send the same by Captain Hare; and the said Bledsoe and affiant being engaged in the court at McKinney, and Throckmorton, Brown, and De Armand, relying upon said agreement, did not attend this court during the first week; that Bledsoe, with whom said agreement was made, left McKinney on last Thursday, and did not expect to come to Denton until yesterday; and affiant, expecting to meet Bledsoe at this court on *to-day*, left McKinney on Monday and expected to reach this place before the meeting of court on to-day, but owing to the fact that affiant missed his way he was prevented from arriving by the meeting of court."

On the same day, 6th December, O. G. Welch, F. E. Piner, and S. Hare, attorneys, upon whom the notice of the motion was served, disclaimed being attorneys for the defendant, saying " that they were, prior to the service of said notice, paid off and discharged from further service in said cause by the agent of defendant."

Upon this the plaintiff, as additional cause supporting her motion, " that it appears that the attorney (S. Hare) upon whose suggestion this cause was dismissed had been discharged by the defendant, and had no authority to appear herein, and also that defendant had withdrawn his answer, and had no right to be heard."

On December 7 the court reinstated the cause, and judgment by default was taken, a writ of inquiry awarded, and the cause continued.

At March term, 1871, plaintiff, by leave of the court, amended her petition, saying " that by mistake of her attorneys her name is alleged to be *Sarah* Huling, when in fact her name is Elizabeth Huling."

On same day, upon a verdict of the jury, final judgment was rendered for plaintiff, canceling the deed from Allen, his attorney, to defendant for the league of land, and requiring the sheriff to place plaintiff in possession of the land, and for costs.

There is no statement of facts. Williams, by writ of error, seeks a reversal of the judgment.

*Hancock, West & North*, for plaintiff in error.

I. The court erred in setting aside the judgment of dismissal. The defendant in error showed no sufficient grounds to support the action of the court. It was based on some alleged agreement between counsel, but no such agreement was produced, and was no doubt some verbal informal understanding of some kind, interpreted by one of the counsel to mean one thing, and by the other to mean another.

Such informal parol agreements are not noticed by courts. The fifteenth rule governing District Courts (32 Tex., 818, and Paschal's Dig., art. 6196) is as follows:

" No agreement between attorneys or parties touching any suit pending will be enforced by the court, unless such agreement be in writing and signed by the parties or attorneys and filed with the papers in the cause."

No cause could better illustrate the wisdom of this rule than the one at bar. A disregard of it begets unseemly wrangling among counsel, and to end it the court should rigidly adhere to the rule requiring all agreements of attorneys as to pending suits to be in writing and filed.

II. But admitting, for the sake of argument, that the the court did not err in setting aside the judgment of dismissal, it certainly was error, on the same day and at the same term and in the same breath, without notice to any one, to proceed to enter a judgment by default.

The case had been called in its order once during the term in accordance with law, (Paschal's Dig., art. 1461,) and the defendant in error had no right to have it called again at the same term, at least not without notice.

Under proper practice, when the motion to reinstate was finally acted on, the case should have stood continued until the next term, especially as the fact had been brought

home to the knowledge of the court that the attorneys of the plaintiff in error had been paid off and discharged, and he was no longer represented in court.

III. It was also error in the court, after a judgment by default, to allow the defendant in error to amend her pleadings without setting aside the judgment by default.

Our statute does not allow pleadings to be amended after judgment by default. It says: " The pleadings in all suits may be amended under the direction of the court, and upon such terms as it may prescribe, at any time *before the parties announce themselves ready for trial.*" (Paschal's Dig., art. 54.)

The case of Portwood *v.* Wilburn, 33 Tex., 713, is precisely in point, and lays down the law correctly, and fully disposes of this case. The character of the amendment is wholly immaterial; it is the *stage* of the case that prevents the amendment. If it was deemed best to amend, all that was necessary to be done was to open the default.

In Gray *v.* Smith, 17 Tex., 389, when the case was called a continuance was entered. At a subsequent day of the term, without setting aside the continuance, a judgment by default was entered; and the court held it was error.

The case should be reversed, both for the error in setting aside the order of dismissal, on the ground that the defendant's attorneys had been misled by some verbal agreement not recognized by the court, and for the error in permitting the judgment by default to be entered without notice when the attorneys of the plaintiff in error had been discharged, and for allowing amendments after judgment by default.

*Walton, Green & Hill,* for defendants in error, cited Hughes *v.* Maddox, 6 Tex., 90; Cartwright *v.* Roff, 1 Tex., 78; Burton *v.* Lawrence, 4 Tex., 373; Prewitt *v.* Perry, 6 Tex., 260; Hopkins *v.* Donaho, 4 Tex., 336; Storey *v.* Nichols, 22 Tex.,

90; Freeman on Judg., § 69; 12 Wheat., 10; 14 How., 312; 1 Tex., 78; 4 Tex., 373; 5 Tex., 262; 29 Tex., 121.

And they argued further, "but the chief objection is that the court, after default and at the next term, without first setting aside the default, allowed an amendment of the plaintiff's petition, and upon the petition as amended gave judgment for the plaintiff."

We think there is no sound objection to this proceeding. In such matters each case is to be judged of by the circumstances which surround it and the character of amendment which is made.

It must be remembered that this was only an amendment in the *Christian* name of a plaintiff who sued in a representative capacity.

The description of the person who sued was not changed; she was still represented in the petition to have been the surviving wife of Thomas B. Huling, and as such to have sued. It was the same contract or deed executed by M. W. Allen, as the attorney in fact of Thomas B. Huling, which was sought to be set aside. There was no material change in the allegations of the petition, and no change that could in the least have affected the defendant's rights or operated as a surprise. The only change was in the Christian name of the plaintiff. There could not be two persons who had the right to sue as the surviving wife of Thomas B. Huling, and it was not, therefore, a material amendment.

The courts are exceedingly liberal in such matters as this.

In the chancery practice, where the rules concerning amendments are much more strict than the practice in our State courts, amendments for the purpose of making parties are allowed freely in all stages of the proceedings. It is said that amendment may be made at any time, and even at the hearing. (Lubé Eq. Plead., 89, note.)

At the hearing. (Danl. Ch. Prac., 4 ed., 417, 418.)

At any time. (Story's Eq. Plead., sec. 887, citing Mitford & Cooper.)

Before the hearing. (Conolly *v.* Taylor, 2 Pet., 566.)

At any stage. (Fisher *v.* Rutherford, Bald., 188.)

After reversal, for want of jurisdiction. (Jackson *v.* Ashton, 10 Pet., 480.)

And for the simple purpose of making parties the chancery court will permit the bill to be amended without withdrawing the replication. (Story's Eq. Plead., sec. 488, citing Cooper's Eq. and Mitford's Plead.; see also Danl. Ch. Prac., above referred to; Bouv. Inst., sec. 4388.)

The rule and the reason of it is well given in Andree *v.* ——, Dick. Ch., 768, cited in Law's U. S. Courts, p. 614, note.)

If, then, the rule to amend by making parties goes to such an extent in the chancery practice that it can be done without withdrawing the replication, and even at the hearing, why should we in our practice find a stumbling-block in its exercise by the District Court in a proper case?

Counsel on the other side rely on the case of Portwood *v.* Wilburn, 33 Tex., 713, decided by the late court. The facts of that case are not reported, but it would appear that the amendment was a material amendment, which went to the merits. Such, we must conclude, was the case. If the amendment had gone to the merits, or added any new charges, then, assimilating the practice to that of amendments in chancery, the default ought to have been first withdrawn, for it is admitted that in the chancery practice, if the bill is amended in any material matter, such as the addition of new allegations or charges, the replication must be withdrawn, and the whole case opened to demurrer or answer. This distinction, well recognized in the practice, was doubtless not called to the judge's mind, or else, as before stated, the case itself was that of a material amendment, adding new grounds and charges, and the broad language used was in reference to the facts before him.

MOORE, ASSOCIATE JUSTICE.—It is unquestionably within the discretionary power of the court to alter, amend, or set aside its decrees and judgments during the term at which they are rendered. Although there might be circumstances under which this court would revise the exercise of this discretionary power, it is certainly only where it is manifest some injury or injustice has been done thereby. Evidently this record does not present such a case. If the court erred in setting aside its order dismissing the case, plaintiff in error is in no condition to complain. He had withdrawn his answer before the order of dismissal was made. He cannot be held to have been in and out of court at the same time. By the withdrawal of his answer he had virtually admitted the insufficiency or invalidity of his defense to the action. And as he did not seek to make any other, or demand that the plaintiff should proceed with the case, he certainly cannot complain of the action of the court in setting aside its order of dismissal, made at the instance of a new volunteer.

Aside, however, from this view of the matter, the application was amply sufficient to warrant the court in reinstating the case. Although the court may not be required to enforce agreements unless in writing and signed by the parties or their attorneys, still it by no means follows that the court commits any error of which a party to such agreement may complain, by the exercise of its discretionary powers, so as to prevent their obtaining an unfair advantage by the violation of such agreement.

The plaintiff in error, having appeared and filed an answer, could not by its withdrawal and the payment of the fees of his attorneys, avoid the legitimate results of his appearance, or claim that the case should proceed against him, as though he had been served by publication and had not appeared.

The amendment of the petition correcting the Christian name of the defendant in error was not of such a character

as to require notice to be given to plaintiff in error. The original petition shows that she sued as the surviving wife of Thomas Huling, and as the representative of the community estate of herself and deceased husband. The correction of the mistake as to her name was a matter of form rather than of substance, and did not present a new cause of action. It would not have been necessary to have served plaintiff in error with notice of it, even though he had not been in court.

There being no statement of facts in the record, the validity or invalidity of the contract of which the defendant in error complains is not presented by the record in such manner as we are called upon to consider it.

There is no error in the judgment, and it is affirmed.

AFFIRMED.